IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 24-CR-129 (LLA) |
| | : | |
| **CHARLES TYLER HIMBER,** | : | Violations: |
| | : | 18 U.S.C. § 231(a)(3) |
| **Defendant.** | : | (Civil Disorder) |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Charles Tyler Himber (the "defendant"), with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.  As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5.  At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.  At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows

and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.  On January 6, 2021, the defendant attended the Stop the Steal rally near the Washington Monument, then traveled to the Capitol, trespassing over the grounds' restricted perimeter as he did so. The defendant then made his way to the east side of the Capitol. On that side of the building, rioters were attempting to enter through the "East Rotunda Doors": a large entrance at the center of the building. Past the doors, and inside the building, there was a large antechamber and then another set of doors that led into the Rotunda.

9.  Around 3:07 PM, an alarm rang as some rioters were escorted out of the building and as others—including the defendant—pushed to get in. At that moment, the defendant joined

with others in pushing rioters forward, who in turn pushed police, as the defendant and others tried to force their way inside. Despite this effort, the rioters were unsuccessful, and the police were ultimately able to close the external door. At that point, the defendant screamed, "Let us in!"

10. Around 3:21 PM, as some rioters were inside the antechamber by the East Rotunda Doors, and others outside the building were trying to push in, a crowd of rioters from the outside managed to push past the police and into the building. The defendant was part of the push.

11. From there, the defendant, along with other rioters, surged forward into the Rotunda, before police were able to close the interior doors. At that point, it became apparent that the defendant and the other rioters were surrounded by police. Police escorted the defendant out of the building. Before they did, however, the defendant took a "selfie" photograph with several other rioters he had traveled with.

12. Outside the Capitol, directly below the steps at the East Front of the Capitol, the defendant climbed onto an armored truck.

13. At another time, outside the East Front of the Capitol, the defendant yelled at someone filming the scene, "you're not fucking safe!"

14. On January 6, 2021, the defendant made several posts on Facebook, including, "We're in," "Making history," and "Storm in Capitol Hill is a go… draining the swamp manually …..Evacuating Capitol Hill Pushing back."

### *Elements of the Offense*

15. The parties agree that a violation of Civil Disorder, 18 U.S.C. § 231(a)(3) requires the following elements:

a. First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

b. Second, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the conduct or performance of any federally protected function.

*Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that:

a. First, he knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

b. Second, at the time of the defendant's act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

 c. Third, the civil disorder obstructed, delayed, or adversely affected commerce and the conduct or performance of any federally protected function.

              Respectfully submitted,

              MATTHEW M. GRAVES
              United States Attorney
              D.C. Bar No. 481052

       By: /s/ Brendan Ballou
         Brendan Ballou
         Special Counsel
         DC Bar No. 241592
         Special Counsel
         United States Attorney's Office
         601 D Street NW
         Washington, DC 20001
         (202) 431-8493
         brendan.ballou-kelley@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Charles Tyler Himber, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5-21-2024

_____
Charles Tyler Himber
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 5/21/24

_____
Warner Bartlett Thompson
Attorney for Defendant